STATE OF MISSOURI, TO USE OF JACOB ERHARDT, Respondent, *v.* JOHN M. ESTEL ET AL., Appellants.

### April 30, 1878.

1. One who, with knowledge of such facts as would excite the suspicions of an ordinarily prudent man, fails to make inquiry, and purchases from a fraudulent vendor, is not a purchaser in good faith, and will be charged with notice of any fraud upon prior creditors affected by the sale.

2. Fraud, like any other fact, may be established by inference, and it is not necessary to establish it by direct and positive proof.

3. An instruction that "fraud will not be presumed where all the facts of the case consist as well with honesty and fair dealing as with an intention to defraud" is objectionable, as to a jury the ambiguity of the word "presume" may seem to imply that fraud cannot be inferred from facts in evidence.

4. A conveyance for a valuable consideration is not rendered fraudulent in law by reason of the mere fact that creditors are thereby delayed in collecting their debts; and a fraudulent intent to hinder and delay creditors cannot be presumed from the fact that delay to creditors resulted from such conveyance.

5. Where substantial alterations are made or many interlineations are inserted in an instruction, it should be rewritten, that the bill of exceptions may plainly show what were the alterations, and the exact shape in which it was given to the jury.

APPEAL from the St. Louis Court of Appeals.
*Reversed and remanded.*

H. A. CLOVER, for appellants: Fraud may be inferred from facts and circumstances shown in evidence. It is not necessary that allegations of fraud be sustained by that direct and plenary proof which excludes all presumption.— *Watkins* v. *Wallace*, 19 Mich. 57; *Kaine* v. *Weigley*, 22

Pa. St. 179; *Reed* v. *Noxon*, 48 Ill. 323. " The law presumes that every man intends the necessary consequences of his acts; and if the act does hinder and delay his creditors, the law presumes it was made with a fraudulent intent."— *Potter* v. *McDowell*, 31 Mo. 69; *Reed* v. *Pelletier*, 28 Mo. 177; *O'Connor* v. *Bernard*, 2 Iowa, 654; *Freeman* v. *Pope*, L. R. 5 Ch. 538; *Norton* v. *Norton*, 5 Cush. 524; *Smith* v. *Cherrill*, L. R. 4 Eq. 390; *French* v. *French*, 6 De. G. M. & G. 95; *s. c.*, 25 L. J. (Ch.) 612; *Strong* v. *Strong*, 18 Beav. 408; *Freeman* v. *Burnham*, 36 Conn. 469; *Corlett* v. *Radcliff*, 14 Moo. P. C. 121; *Mining Co.* v. *Atwell*, L. R. 7 Eq. 347; *Van Wyck* v. *Seward*, 18 Wend. 375; *Thompson* v. *Webster*, 7 Jur. (N. s.) 531; *Babcock* v. *Eckler*, 24 N. Y. 623.

THOMAS A. RUSSELL, for respondent: Although a vendor may have intended by the sale of realty to defraud his creditors, to render the conveyance void the purchaser must have had notice of such intent.— *Henderson* v. *Henderson*, 55 Mo. 534; *Little* v. *Eddy*, 14 Mo. 160; *Steele* v. *Ward*, 25 Iowa, 535; *Byrne* v. *Becker*, 42 Mo. 264. Fraud will not be presumed when all the facts consist as well with honesty and fair dealing as they do with an intent to defraud.— *Ames* v. *Gilmore*, 59 Mo. 537; *Henderson* v. *Henderson*, *supra; Rumbolds* v. *Parr*, 51 Mo. 592.

HAYDEN, J., delivered the opinion of the court.

This is an action on a bond given by the appellants, under the Sheriffs' Act, in an attachment suit brought by Steinmeyer & Co. against one Hermanns. The attachment was levied upon a stock of goods, and this stock the present plaintiff, Erhardt, claimed as his own, and, upon the sheriff continuing the levy, took the bond here sued on. The petition alleged that Hermanns had no interest in the property attached, and that the plaintiff was the owner. The answer averred that the goods were the property of Hermanns and

rightfully attached as such. Upon the trial the evidence showed that the plaintiff, Erhardt, was a step-son of Hermanns, the debtor, and that the latter sold out his stock of groceries to the plaintiff, partly for cash, partly for notes; that when Hermanns so sold his stock he was in debt, and that this stock of goods was all, or nearly all, of his property. Evidence was adduced on the part of the plaintiff tending to show that the sale was made in good faith, and that the plaintiff did not know that Hermanns was in debt; while on the other hand the defendants introduced evidence tending to show that the transfer was in fraud of Hermanns's creditors, and that the plaintiff knew that it was so. Into the details of this it is unnecessary to go, as the weight of the evidence will not be considered. The jury found for the plaintiff.

The questions to be examined arise under the instructions. The first instruction given for the plaintiff was to the effect that if the plaintiff purchased the goods from Hermanns, paying the latter a valuable consideration, and took possession of them, and remained in possession up to the time of the levy, then the goods were *primâ facie* the property of the plaintiff; and that to entitle the defendants to make out their case it would be necessary for them to show that the sale was made by Hermanns with the intent to hinder, delay, or defraud his creditors, and that the plaintiff was cognizant of such fraudulent intent; that unless these facts were established by a preponderance of testimony, the jury should find for the plaintiff. On the plaintiff's part the jury were further instructed that if Erhardt bought the goods from Hermanns in good faith, and paid a valuable consideration for them, and that the goods were delivered to Erhardt, he acquired a valid title to the goods; and that the validity of the sale would not be affected or impaired by the fact that Hermanns, in making the sale, intended to hinder, delay, or defraud his creditors, unless the jury fur-

ther found that Erhardt had knowledge of or was privy to such fraudulent design. The other instruction given for plaintiff is noticed below.

The defendants asked the court to give an instruction in regard to the kind of knowledge or notice which Erhardt must have had in order to bring the transaction of Hermanns home to Erhardt. This the court below refused to give as asked, but, instead, gave the following: "Actual knowledge, however, on the part of Erhardt is not necessary to be shown. It is sufficient if it appear that he had knowledge of such facts and circumstances at the time of the sale as would lead a man of ordinary prudence and intelligence to believe or infer that Hermanns by such transaction contemplated a fraud upon his creditors." The instruction as asked went beyond this, and, though not clearly expressed, was evidently intended to tell the jury that if Erhardt had knowledge of such facts as would have excited the suspicions of a man of ordinary prudence and business capacity, and have put such a man upon inquiry, this was sufficient to bring knowledge of the nature of the transaction home to Erhardt. This goes a step further than the instruction given by the court. A would-be purchaser may have his suspicions aroused, yet may not have sufficient ground for concluding that the intent is to defraud creditors ; he may shut his eyes in spite of well-grounded suspicions. But this the law does not allow him to do. If he does so, he fails to exercise that diligence and caution which, as against prior creditors, are essential to give to him the character of a *bona fide* purchaser. It is upon the supposition that the transfer is made by the vendor with a view to defraud or delay creditors that the question of knowledge in the purchaser becomes important ; but if as to the vendor the transfer is fraudulent, the vendee who is put on his guard could presumably ascertain the actual facts, and whether he could or not he may well be held liable for the consequences when by his purchase he

takes the risks which his suspicions have suggested. We think that the defendants were entitled to the instruction as to notice, in the form in which we have stated it above. *Baker* v. *Bliss*, 39 N. Y. 70; *Ringgold* v. *Waggoner*, 14 Ark. 69; *Johnston's Heirs* v. *Harvey*, 2 P. & W. 82; *Martel* v. *Somers*, 26 Texas, 551.

The instruction asked by the defendants should have been given, to the effect that fraud may be established by inference, in the same way as any other fact, and that it is not necessary to establish it by direct and positive proof. This was the more essential, as on the plaintiff's part the jury were instructed that " fraud will not be presumed when all the facts consist as .well with honesty and fair dealing as they do with an intention to defraud." In the majority of cases like the present there will be no direct evidence of fraud; and the more skilful the debtor is (supposing the transfer to be fraudulent) in covering up the fraud, the less direct will be the evidence. The effort of the law is to get at the real character of the transaction, however concealed. If this must be arrived at, almost of necessity, by inference, as a chancellor would intuitively know, so a jury may properly be reminded of a rule of legal investigation which indeed lies at the bottom of their own function.

On the other hand, the phrase that " fraud will not be presumed when all the facts consist as well with honesty and fair dealing as they do with an intention to defraud," when put to a jury in cases of this kind, is adapted to mislead, not to instruct. The word " presume," as here used, is obviously ambiguous, confounding the different meanings of " infer " and " assume ; " and although this ambiguity does not deceive lawyers, it is very likely to confuse jurors. They may be told that the burden of proof is upon the party who asserts the fraud, without being perplexed with an instruction which may seem to them to imply that they cannot infer fraud or " presume " it inferentially from facts in evidence.

That the intent to hinder and delay creditors in the collection of their debts may exist independently of the intent to defraud creditors and prevent them from recovering debts is clear. It may be said that the words of the instruction given sufficiently pointed out this difference, but the defendants had a right to a clearer explanation than that implied by the mere use of the disjunctive particle.

The defendants cannot complain that the court below refused an instruction in the words of the statute (Wag. Stats. 280, sect. 21), if the law was laid down as there declared, but with a closer application to the facts of the case.

The court below properly refused to give the following instruction: "The presence of an intent to hinder, delay, or defraud creditors is essential to render an assignment or transfer of goods or chattels void; but every man is presumed to intend the necessary consequences of his acts, and if an act necessarily delays, hinders, or defrauds creditors, then the law presumes it is done with a fraudulent intent." As applicable to a case of this kind, this instruction is self-contradictory and does not state the law. The present question is not one of a voluntary conveyance, as was that of *Potter* v. *McDowell*, 31 Mo. 62, from which the language of the instruction seems to have been borrowed. See *Babcock* v. *Eckler*, 24 N. Y. 623; *Pope* v. *Wilson*, 7 Ala. 690; *Jones* v. *Huggeford*, 3 Metc. 515. In the case at bar, the question concerns a purchaser for a valuable consideration, who took possession of the property sold, and had possession of it at the time of the attachment. The burden was on the defendants to show that the transaction was void under the statute, and to satisfy the jury, as a matter of fact, of the intent. This the defendants were at liberty to do, if they could, by arguing to the jury that the transfer in fact delayed the creditors, and that the debtor must have intended the necessary consequences of his act; but for the court to have laid down such general reasoning as a rule of law, would have plainly been

error.  If from the mere result of delay to creditors in collecting their debts — a delay which often arises where the transfer is perfectly unobjectionable — a guilty intent is to be presumed as a matter of law, not inferred as a matter of fact, not only would there be in most cases of the kind nothing for the jury to pass upon, but creditors would to a great extent have the power of preventing a debtor from putting his property in a shape less advantageous to them.  But the law does not give the general creditor an implied lien on his debtor's property ; and a debtor may, for instance, sell his real estate and put the purchase-money in his pocket.  The necessary consequence of this act may be to hinder and delay creditors in the collection of their debts, but no rule of law raises from this a presumption that the transfer was made with a purpose to defeat the operation of the statute.

The instructions should be preserved in such condition that it can be readily seen what were given and what refused.  In the present case, owing to the confused state in which they appear in the record, from alterations and interlineations, it is not easy to tell how they were actually given to the jury.  When substantial alterations are made, or many interlineations are to be inserted, it is greatly preferable that the instruction should be reframed or rewritten.

For the errors above pointed out the judgment must be reversed and the cause remanded.  All the judges concur.